1  MARK S. BRAUN, Esq.
   Nevada Bar Number 7615
2  1600 S. Valley View Blvd.
   # 2132
3  Las Vegas, Nevada 89102
4  Tel: 702-287-2354
   Fax: 866-509-3683
5  Forest4005@hotmail.com
6  Counsel for Plaintiffs/Counter-Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| BLUE MOON MARKETING, LLC; | Case No. 213-cv-2238-JAD-GWF |
| Plaintiff, | |
| vs. | Hon. Jennifer A. Dorsey, United States District Judge |
| SCOTT R. MATTHEWS, an individual; TRAVEL EXCURSION NETWORK, LLC, a Florida limited liability company; 4 STAR HOLDINGS, LLC., a Florida limited liability company; ALLAN R. LEFFLER, an individual; TRACY L. LEFFLER, an individual; PRESTIGE TRAVEL SYSTEMS, INC., a Florida corporation; RON LASCAL, an individual; SUMMER BAY RESORTS CROWN CLUB, LLC., a Florida limited liability company; PHILLIP BREWER, an individual; WESTGATE RESORTS, LLC., a Florida limited liability company; WESTGATE RESORTS, INC., a Florida Corporation; RW ADVERTISING, INC., an Illinois corporation; REVENUE FROTIER, LLC., a California foreign limited liability company; CALLS SERVICES INTERNATIONAL, LLC, a Florida limited liability company; and DOES 1-10, inclusive, | Hon. George Foley, Jr., United States Magistrate  **PLAINTIFF'S OPPOSITION TO DEFENDANT REVENUE FRONTIER, LLC'S MOTION TO DISMISS** |
| Defendants | |

| | |
|---|---|
| 1 | ----------- |
| 2 | SCOTT R. MATTHEWS, an individual; TRAVEL SHOPPING NETWORK, LLC, a Nevada Limited Liability Company, |
| 5 | Counterclaimants, |
| 6 | vs. |
| 8 | BLUE MOON MARKETING, LLC, a Nevada Limited Liability Company; BRIAN MACGREGOR, an Individual; DOES 1-5, Inclusive, and DOES,INC. 6-10, inclusive, |
| 11 | Counter-Defendants |

**COMES NOW** Plaintiff BLUE MOON MARKETING, LLC, by and through its counsel of record, MARK S. BRAUN, ESQ., and brings this Opposition to Defendant REVENUE FRONTIER, LLC's Motion to Dismiss filed January 31, 2014.

-1-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## FACTS

### A. Admissions Made By Revenue Frontier in its Motion to Dismiss

As the starting point in its Opposition, BLUE MOON MARKETING, LLC. (Hereinafter "Plaintiff") directs the Court's attention to page 3 of REVENUE FRONTIER, LLC's (Hereinafter "Defendant") Motion to Dismiss. At line 1 of page 3 Defendant admits that there are indeed "……five factual assertions in support of (Plaintiff's) six claims." For purposes of this Opposition, four of the very relevant factual assertions in Plaintiff's Complaint---which are specifically recognized by the Defendant---are as follows:

1. That Defendant assisted in broadcasting the alleged infringing TV program.
2. That the said infringing TV program was scheduled (over a stated specific time period) for nationwide rotation on a DirectTV channel controlled by Defendant and that same DirectTV channel is available to cable and satellite viewers nationwide, including in Nevada and this judicial district.
3. That Defendant aired the infringing TV program as much as 17 percent of the total available air time on Defendant's DirectTV channel over the time period referenced by the Plaintiff.
4. That in October of 2013 Defendant (as it admits throughout its Motion to Dismiss) received a written cease and desist notice from the Plaintiff. Further, the Defendant admits in its Motion that the cease and desist notice alleged that the Defendant was continuing to facilitate or participate in the infringing

conduct and that Defendant continued to profit from and provide critical support to the infringing conduct. ***What the Defendant fails to state, since it cannot, is that it ever contacted Plaintiff's counsel upon receipt of the cease and desist notice to obtain further information about it. Instead, the Defendant just chooses to argue that the cease and desist letter was inadequate and, gosh, the Defendant just couldn't figure out what it was all about.***

In its instant Motion, the Defendant fails to state whether or not it ceased airing the infringing TV program and, if it did, at what point in time.

Further, in the affidavit of Revenue Frontier's President Stacy Durand, attached to support Defendant's Motion to Dismiss as Exhibit 1, she affirms that the defendants who actually produced the infomercial at issue are "clients" of Revenue Frontier (paragraph 7) and, therefore, she admits that her company is and was in an on-going business relationship with those same defendants. Affiant Durand states that Revenue Frontier "obtains from networks blocks of reserved airtime, after which the networks run the *clients'* television infomercials at certain dates and times on certain channels." (Paragraph 2, Defendant's Exhibit "A". Emphasis added.) Therefore, it must be noted for the record that Defendant Revenue Frontier certainly appears to admit that it *facilitated, aided and made possible* (surely for a monetary profit) the broadcasting and public distribution of a television program production that is, says Plaintiff, clearly a copyright infringement of its own property.

Ms. Durand also admits under oath that her company, the Defendant, received the cease

-3-

and desist letter mailed to it by legal counsel for the Plaintiff in October and that her company "has maintained" the cease and desist letter. (Paragraph 11, Defendant's Exhibit "A".) That warning letter raises dispositive factual and legal points that Plaintiff will put forward in this Opposition in reference to Defendant's claims of inadequate specific jurisdiction and supposed failure to state a claim against this Defendant.

### B. The Response of Other Named-Defendants

Plaintiff's Complaint names fifteen specific co-defendants, of which Revenue Frontier is only one. Despite Revenue Frontier's stated difficulties in understanding the Complaint and the allegations contained in it, so far *nine* of the other named-defendants have not had that problem and have dutifully filed their Answers in this case. Those nine defendants who have answered so far are all located in Florida, which is obviously a much further distance away from this forum than Revenue Frontier's headquarters located in Santa Monica, California. In fact, on information and belief, Revenue Frontier is the *only* defendant in this case located next door in the State of California.

Meanwhile, Defendant Scott Matthews and a sixteenth party, Travel Shopping Network, LLC, have now filed a Counterclaim in this same action against the Plaintiff Blue Moon Marketing, LLC. and the battle is joined in the United States District Court for Nevada.

///

///

///

///

-4-

## II

## LEGAL ARGUMENT

### A. Defendant's Claim of lack of in personam Jurisdiction

#### 1. General Jurisdiction

In personam jurisdiction can only be exercised over a non-resident corporate defendant if it has certain minimum contacts with the forum state such that the maintenance of the legal action does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). For a court to exercise *general jurisdiction*, the defendant's activities in the forum state must be so continuous and systematic that they rise to almost a physical presence in the state. *Helicopteros Nacionalos v. Hall*, 466 U.S. 408 (1984). Plaintiff is unaware of exactly how many households in the State of Nevada use DirectTV as their source for obtaining television channels but, given the size and success of the DirectTV corporation it would stand to reason that there are thousands of subscribers in this and each of the other States. It is further reasonable to believe that some of those thousands of Nevada subscribers watch or have watched the particular channel controlled by the Defendant. The purpose of the Defendant's satellite channel is to induce viewers to spend their money with companies paying the Defendant to market goods and services. It is not uncommon, in fact, for marketing entities to pay companies like the Defendant based on each viewer who calls for more information. Defendant, therefore, is financially benefiting, in part, from Nevadans coughing up their money. Defendant does not deny that almost one-fifth of the airtime on its DirectTV channel was devoted to running the knock-off TV infomercial that is the underlying subject of this litigation

and one fifth of the time that knock-off TV infomercial was inducing Nevadans (along with others) to buy the vacation products is was marketing.

However, Plaintiff has to concede that it has no evidence that the Defendant has an office or staff in Nevada, that it is registered to do business in the forum state, that it has a registered agent in Nevada for service of process or that it pays Nevada state taxes. While the Ninth Circuit Court of Appeals has suggested that evidence that a nonresident defendant advertises in a particular forum is significant for general jurisdiction when the defendant markets its own product by targeting forum residents---*Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1103 (9th Cir. 2006); *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240 (9th Cir. 1984)---it has found that there is practically no significance for general jurisdiction when other entities use the defendant's publication to promote their own businesses. *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011). Plaintiff has to concede for purposes of this Opposition that the commercial activities of the Defendant, at least as Plaintiff is able to discern at this stage of the litigation proceedings, certainly appear to more resemble the second model. Further, under the findings of law and fact in *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.* 223 F.3d 1082 (9th Cir. 2000); *Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986) and *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114 (9th Cir. 2002), the Plaintiff has to concede that this Court likely does not have general jurisdiction over the Defendant.

**2. Specific Jurisdiction**

This forum, however, *does* have specific jurisdiction over the Defendant. As set forth in *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) the Ninth

Circuit uses a three-prong test to analyze the question of specific jurisdiction:

1. The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
2. The claim must be one which rises out of or relate to the defendant's forum-related activities, and;
3. The exercise of jurisdiction must comport with fair play and substantial justice.

Certainly as to test number 2, the instant claims Plaintiff has brought against the Defendant arise out of the Defendant's forum related activities. The purloined infomercial was, as argued earlier, aired in Nevada and certainly generated revenue to the Defendant out of the pockets of Nevada residents. And, as the Ninth Circuit recently confirmed, where a defendant's motion to dismiss is based on written materials rather than an evidentiary hearing (as is the situation here), the Plaintiff needs to only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Brayton Porcell, LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010).

Turning then to the first *Schwarzenegger* test, Plaintiff again directs the Court's attention

to *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011). In that case, the Defendant was an Ohio corporation with no physical presence in the forum jurisdiction (California) and, as the court concluded, no other significant other ties to the state per *Bancroft, et al.* As in the instant matter, the Defendant sold time on its mass media outlet (an internet website in *Mavrix*) and intellectual property belonging to the Plaintiff was used on the Defendant's website without permission from the Plaintiff and therefore in violation of Plaintiff's copyright. While the Court in *Mavrix* rejected the Plaintiff's claim of general jurisdiction over the Defendant, it found that there was specific jurisdiction.

Because the Plaintiff in *Mavrix* alleged copyright infringement, the Court of Appeals concluded that it was a tort-like cause of action and "purposeful direction" was the proper analytical framework. (citing *Schwarzenegger*, 374 F.3d at 802). The Ninth Circuit court cites *J. McIntyre Machinery, Ltd. V Nicastro*, 131 S.Ct. 2780 (2011), which found specific jurisdiction where there had been purposeful direction. In *Calder v. Jones*, 465 U.S. 783 (1984) the Supreme Court employed an "effects" test to determine if there was purposeful direction. Under *Calder*, the defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.

In the matter at hand, the Defendant committed an intentional act in that it was served with legal notice of the copyright infringement by counsel for the Plaintiff but continued to run the infringing infomercial on its DirectTV channel regardless. Therefore part 1 of the *Calder* test is met. Part 2, the <u>expressly aiming</u> component, is satisfied under the *Mavrix* analysis because the Defendant's TV channel could count on reaching consumers in all fifty states and the TV

-8-

channel cultivated its nationwide audience for commercial gain. Therefore, the Defendant in *Mavrix* as well as in this case could not characterize the consumption of its "product" in any state as "random," "fortuitous," or "attenuated." Citing *Burger King Corporation v. Rudzwicz*, 471 U.S. 462 (1985). Rather, in *Mavrix* as in the instant matter, the consumption in the forum state was a predictable consequence of the defendant's business model. *Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). McCarren International Airport in Las Vegas is one of the busiest airports in the United States and has scores if not hundreds of flights daily leaving for other travel and vacation destinations. Las Vegas itself is incredibly tied into the travel industry. People who live in Las Vegas and Nevada are prime targets for marketing efforts aimed at selling travel packages to consumers. In *Mavrix* the Court seemed, in the end, to be tilted in favor of finding express aiming by an otherwise mass media operation through the simple logic of *Kulko v. Superior Court of Cal.*, 436 U.S. 84 (1978), where the Supreme Court concluded that requiring the plaintiff to sue the defendant in defendant's "home" forum would substantially undermine the legitimate interests of the plaintiff in proceeding with its cause of action in plaintiff's forum of choice.

That brings us to the third *Calder* test which is the question of harm. The Ninth Circuit in *Mavrix* determined that a corporation or other business entity can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business. See *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002). And, that jurisdictionally sufficient harm may be suffered in multiple forums. Citing, *Core-Vent Corp. v. Nobel Indus.* 11 F.3d 1482 (9th Cir. 1993). The economic losses suffered by the Plaintiff here caused by the intentional

-9-

infringement of its copyright by Defendant was foreseeable by the Defendant by, if for no other reason, the cease and desist letter sent to the Defendant by Plaintiff's counsel in October 2013 which was then ignored by the Defendant. It was further foreseeable that this economic loss would be inflicted not only in California, the Defendant's principal place of business, but also in Nevada. Plaintiff Blue Moon Marketing, LLC has presented a prima facie case of purposeful direction by Defendant Revenue Frontier, LLC sufficient to survive a motion to dismiss for lack of personal jurisdiction.

### B. Defendant's Claim that Plaintiff Has Failed to State a Claim

Finally, that brings this Opposition to address the Defendant's last argument, which is that Plaintiff's Complaint fails to state a claim or claims against the Defendant.

F.R.C.P. 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the....claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint which falls short of the Rule 8(a) standard may be dismissed pursuant to F.R.C.P. 12(b)(6) if it fails to state a claim upon which relief may be granted. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on it face." *Twombly, 550 U.S. at 556-57*. When deciding whether to grant a motion under F.R.C.P. 12(b)(6) the court generally "may not consider any material beyond the pleadings." *Hal Roach Studios, Inc. v. Richard Feinder & Co.*, 896 F.2d 1542, 1555

-10-

n. 19 (9th Cir. 1990).  The court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).  The court must also construe the alleged facts in the light most favorable to the Plaintiff.  *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).  Further, a complaint "should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Van Buskirk v. Cable New Network*, 284 F.2d 977,980 (9th Cir. 2002).  Or, as the Ninth Circuit court put it in *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (1997):  The issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim."

A review of the Complaint in this matter reveals that the causes of action are laid out in an orderly, cogent manner.  As the Defendant itself concedes in its instant Motion to Dismiss, there are at least five factual allegations in the Complaint specifically pertaining to this Defendant.  Those and other factual allegations go to the Defendant's actions or inactions and the reasons those actions give rise to Plaintiff's claims for damages, and Plaintiff believes that just a review of those five facts acknowledged by Defendant----along with Defendant's admission in its supporting affidavit that the co-defendant who apparently actually produced the knock-off infomercial is/was its "client" for purposes of airing the TV show---is enough to satisfy the requirements to survive a 12(b)(6) motion.

In the event that this Court agrees with Defendant's argument that the Complaint does not sufficiently state a claim or claims, the Plaintiff requests that the Court grant the Plaintiff leave to amend its Complaint rather than dismissing it as to the claims against the Defendant.

## III

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be rejected in its entirety.

Dated this 17th day of February, 2014.

/s/ Mark S. Braun
_____
MARK S. BRAUN, ESQ.
Nevada Bar No. 7615
1600 S. Valley View Blvd. # 2132
Las Vegas, NV 89102

Attorney for Plaintiff
BLUE MOON MARKETING, LLC.

# CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February, 2014 I served the foregoing OPPOSITION TO DEFENDANT'S MOTION TO DISMISS upon:

DAVID S. LEE, ESQ.
7575 Vegas Drive, Suite 150
Las Vegas, NV  89128

CLYDE De Witt, Esq.
800 US Bank Building
2300 W. Sahara Avenue
Las Vegas, NV  89102

By causing a full, true and correct copy thereof to be sent by mailing in a first-class-postage-paid envelope, and deposited with the US Postal Service in Las Vegas, Nevada.

/s/ Mark Braun